■ WILLIAM J. MORGAN, Respondent, v FRANK E. KUNKER, III, et al., as Trustees of the Huldah Latimer Kunker Irrevocable Management Trust, Appellants. [704 NYS2d 158] —Carpinello, J. Appeal from an order of the Supreme Court (Dier, J.), entered September 9, 1998 in Warren County, which granted plaintiff's motion for summary judgment.

On this appeal we must determine the legal obligations of the parties arising from a settlement agreement entered into after a failed real estate transaction. Plaintiff, desiring to purchase a piece of property on the shore of Lake George in the Town of Bolton, Warren County, prepared a self-styled "Offer To Purchase Real Property", which stated as follows: "I, [plaintiff], offer to purchase the 'Carriage House' premises from the Huldah Latimer Kunker Irrevocable Family Trust of January 26, 1989, Timothy J. O'Connor, [the then] Trustee, for the sum of Five Hundred Twenty-Five Thousand ($525,000.00) Dollars subject to the incorporation of the general terms and provisions of the Warren County Board of Realtors Standard Real Estate Listing [sic] Contract".

The only contingency contained in the offer was plaintiff's ability to obtain mortgage financing. The offer also specifically indicated that it would expire "at 5:00 p.m. Tuesday, June 27, 1995" and could be accepted by the forwarding of "an acceptance" by first class mail, facsimile or Federal Express. Accompanying the offer was a check for $2,500 representing a deposit on the "agreed price of $525,000". In full conformance with the terms of the offer, the then Trustee of the Huldah Latimer Kunker Irrevocable Management Trust (hereinafter the Trust) accepted the offer in writing by letter dated June 26, 1995. The letter of acceptance acknowledged that plaintiff would need a "fully executed contract" for the purpose of obtaining mortgage financing.

Although the reasons for the parties' failure to execute the anticipated "fully executed contract" are disputed, the seriousness of plaintiff's interest in acquiring the subject premises is reflected by his remittance of checks totaling $120,499.54 as deposits between June 1995 and September 1996. Also in dispute are the reasons for the parties' ultimate failure to consummate the transaction. It is sufficient to note that by November 1996 plaintiff "los[t] interest" in purchasing the property and located a substitute buyer, albeit at the reduced price of $457,500. At the request of the attorney for the Trust, plaintiff signed a formal written "agreement" on December 2, 1996 whereby he agreed to allow the Trust to retain all deposited funds except $75,000, which was to be remitted to him on November 30, 1997. This executed and notarized agreement also recited that the parties released each other with respect to "any obligation to purchase or sell" the subject premises.

Before the agreed-upon funds were to be returned, specifically on November 6, 1997, plaintiff sued for the recovery of all

deposited funds. After joinder of issue, Supreme Court granted plaintiff's motion for summary judgment finding that "the issue to be decided is whether or not plaintiff and defendant ever entered into a binding [real estate] contract" for the sale of the subject premises. Answering this question in the negative, Supreme Court ordered the return of all deposited funds to plaintiff.

Although we agree with Supreme Court's general observation that in order for a contract for the purchase and sale of real property to be enforceable, it must be sufficiently certain so that the " 'full intention of the parties can be ascertained from it alone, without recourse to parol evidence' " (*Conway v Maher*, 185 AD2d 570, 572, quoting *Cooley v Lobdell*, 153 NY 596, 600), including the identity of the parties, a description of the property and the purchase price (*see, Aceste v Wiebusch*, 74 AD2d 810), we need not engage in a discussion (as did Supreme Court) as to whether the offer and acceptance at issue here constitute a binding contract. At the time the parties entered into the settlement agreement containing the mutual releases, the Trust clearly believed that it had a claim against plaintiff involving the purchase of the property which it agreed to relinquish in exchange for a portion of the deposit. Since a "good-faith relinquishment of a cause of action, even one which proves to be unenforceable, constitutes valid consideration" (*Nolfi Masonry Corp. v Lasker-Goldman Corp.*, 160 AD2d 186, 187), the settlement agreement should be enforced in accordance with its terms.

Searching the record, as we are entitled to do on the appeal of a summary judgment motion (*see, e.g., Raine v Gleason*, 194 AD2d 395, 396, *lv denied* 82 NY2d 655), we grant summary judgment in favor of defendants by awarding it all of the deposited funds, except $75,000 which is awarded to plaintiff with interest only to the date that defendants deposited same with the clerk of the court, i.e., December 10, 1997 (*see,* CPLR 3219). Moreover, by virtue of defendants' offer to liquidate damages pursuant to CPLR 3220 in the amount of $75,000, and said offer having been rejected by plaintiff, the matter must be remitted to Supreme Court solely for a determination of defendants' necessary expenses.

Cardona, P. J., Peters, Spain and Graffeo, JJ., concur. Ordered that the order is reversed, on the law, with costs, plaintiff's motion for summary judgment denied, summary judgment granted in favor of defendants enforcing the parties' settlement agreement, plaintiff is awarded $75,000 with interest from November 30, 1997 to December 10, 1997 only and

matter remitted to the Supreme Court for a determination under CPLR 3220 concerning defendants' necessary expenses.